Gad PEREZ;  Tifferet Perez, Petitioners,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 95–70307.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 16, 1996.*

Decided Sept. 16, 1996.

* The panel unanimously finds this case suitable for disposition without oral argument.  Fed. R.App. P. 34(a);  9th Cir. R. 34–4.

Jose A. Bracamonte, Phoenix, AZ, for petitioners.

John L. Davis, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent.

Before: SNEED, JOHN T. NOONAN, Jr. and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Petitioners Gad and Tifferet Perez seek review of the Board of Immigration Appeals' (BIA) denial of their application for suspension of deportation. The BIA held that the Perezes and their son, a United States citizen, failed to establish that they would suffer "extreme hardship" upon deportation to Israel. The Perezes filed a timely petition for review pursuant to section 106(a)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1105a(a)(1). We agree with the BIA that the Perezes failed to show extreme hardship and deny their petition for review.

I

In May 1984, Gad and Tifferet Perez, husband and wife, left their home in Israel and entered the United States under visitor visas valid until July 25 of that year. On July 1, Tifferet Perez gave birth to a son, Avi Perez, in Kansas. The Perez family remained in Kansas for three years and then moved to Arizona, where the family currently resides. Gad Perez works as a house painter, Tifferet Perez is a child care provider, and Avi Perez, now twelve, attends school.

Deportation proceedings were commenced against Gad and Tifferet Perez. They admitted deportability, but requested suspension of deportation on the ground of extreme hardship pursuant to 8 U.S.C. § 1254(a)(1). To support this claim, the Perezes argued that their son will face adjustment problems if he accompanies them to Israel. Avi will have to learn to read and write Hebrew, of which he has some aural understanding but in which he is illiterate. Avi will also have to adopt to a new culture, new friends, new foods, and new schools. A school psychologist from Avi's elementary school wrote a supporting letter which concluded that, due to "environmental differences" between the United States and Israel, a move would "cause serious adjustment difficulties" for Avi.

Gad and Tifferet Perez argued that they will have difficulty obtaining good jobs and face religious discrimination due to their practice of Messianic Judaism (which posits that Jesus Christ was indeed the Messiah of whom the Old Testament foretold). The entire family will be threatened, they argued, by terrorism in Israel.

When asked if they would leave Avi behind if they were forced to return to Israel, Tifferet Perez testified that she and her husband had "never talked about it." She further testified that she wanted Avi to remain here, but that they "will have to think a lot about it before we would decide" whether to leave Avi behind.

The Immigration Judge (IJ) suspended deportation but the BIA, after considering the cumulative hardships posed by deportation, reversed and denied the petition for suspension. With regard to the possibility of family separation, the BIA held that there was insufficient evidence of legitimate arrangements to leave Avi in this country and that, in any event, any hardship from separation "was the result of parental choice, and not

his parent's deportation." This petition for review followed.

## II

Where, as here, the BIA conducts an independent review of the IJ's findings, we review the BIA's decision and not that of the IJ. *Yepes–Prado v. U.S. INS*, 10 F.3d 1363, 1366 (9th Cir.1993). The BIA's decision not to suspend deportation is reviewed for abuse of discretion. *Hernandez–Robledo v. INS*, 777 F.2d 536, 541–42 (9th Cir.1985). The BIA is required to "state its reasons and show proper consideration of all factors." *Hassan v. INS*, 927 F.2d 465, 467 (9th Cir. 1991) (internal quotations omitted).

Section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1), vests the Attorney General (in this case, the BIA) with discretion to suspend the deportation of an alien who has been physically present in the United States for at least seven years, has good moral character, and would face extreme hardship to himself or his citizen spouse or child. The BIA held for the Perezes on the first two requirements, unchallenged on appeal, but found no extreme hardship.

"Extreme hardship" is hardship that is "unusual or beyond that which would normally be expected" upon deportation. *Hassan*, 927 F.2d at 468. "The common results of deportation or exclusion are insufficient to prove extreme hardship." *Id.*

The Perezes argue that the aggregate force of their hardships upon deportation requires a finding of extreme hardship as a matter of law. With regard to their son, they identify the following hardships: "adjustment to a new language, culture, geography, cuisine, friends, pedagogical methods and school structure, climate, and a host of other factors." With regard to themselves, the Perezes contend they will face economic hardship due to Israel's economy, alleged religious intolerance, and the threat of terrorism.

The BIA correctly determined that the Perezes failed to establish unusual or *extreme* hardship. The hardships faced by

their citizen child with regard to adjusting to a new language, culture and educational environment are what would normally be expected with any child accompanying a deported alien to a foreign country. The supporting letter from the school psychologist warning of "adjustment difficulties" does not persuade us otherwise; it offers no suggestion that Avi is unusual or that the difficulties he would face are any different in kind or degree from any other child in his position.

Nor are the economic hardships to be faced by the Perezes upon return to Israel— a potentially lower standard of living and fewer job opportunities—beyond that one would normally expect whenever an alien is deported to a country with a less vibrant economy than the United States. *See Ramirez–Durazo v. INS*, 794 F.2d 491, 498 (9th Cir.1986) (economic detriment of this sort is not unusual or extreme).

Although the Perezes claim to fear religious persecution upon return to Israel, the record contains no evidence to suggest they will, in fact, face such hardship.[1]

The calculus is not significantly changed when the threat of terrorism is added. Although Israel is saddled with terrorism, so are many other countries to which deportable aliens are returned. Indeed, recent events have shown that devastating acts of terrorism occur even in the United States. The threat of terrorism in Israel poses a hardship to the Perezes, but in light of the prevalence of terrorism in the world, we cannot say this hardship is unusual or extreme.

We disagree, however, with the BIA's approach to the possibility of the Perezes' family separation. The BIA held that there was insufficient evidence of legitimate arrangements for Avi's care in the United States to indicate he would be left here, and that, in any event, any hardship from separation "was the result of parental choice, and not his parent's deportation."

To the extent the BIA attributed the hardship posed by family separation to "parental choice" not deportation, the BIA abused its discretion. Such a limited approach to family separation is contrary to this court's decision in *Cerrillo–Perez v. INS*,

---

1. The Perezes have not filed an application for     asylum based on a fear of religious persecution.

809 F.2d 1419 (9th Cir.1987), where we held the BIA abused its discretion by adopting a *per se* rule that eliminated the need to consider the hardship to a child upon separation from a deported alien parent. *Id.* at 1426.

In *Cerrillo–Perez*, the BIA declined to consider separation hardship based on the presumption that young children would accompany their deported parents. We reversed, explaining that "a *per se* exclusion of a relevant factor is not consistent with the BIA's responsibility both to determine extreme hardship based on individual experience, and to reach an express and considered conclusion." *Id.* (emphasis in original) (internal quotations and citations omitted).

The BIA's methodology of attributing separation hardship to parental choice not deportation, articulated in this and other cases, *see, e.g., Matter of Ige*, Int. Dec. 3230 (BIA 1994), is just such a *per se* rule. If applied consistently, it would eliminate the need for the BIA to ever factor into the hardship equation those difficulties associated with family separation. It would always be parental choice, not deportation, causing the hardship.

Nevertheless, we agree with the BIA that the Perezes have not presented sufficient evidence to support their claim of extreme hardship based on the potential separation of their family. Although not mentioned expressly by the BIA here, in other cases the BIA has held that a claim of hardship based on family separation will not necessarily be accorded "significant weight" because the claim "can easily be made for purposes of litigation" and "most parents would not carry out such an alleged plan in reality." *Matter of Ige*, Int. Dec. 3230. Therefore, the BIA requires "at a minimum, an affidavit from the parents stating that it is their intention that the child remain in this country, accompanied by evidence demonstrating that reasonable provisions will be made for the child's care and support." *Id.* The BIA's statement that there was insufficient evidence of legitimate arrangements for Avi's care in this country was apparently a reference to this evidentiary requirement.

We hold this is a valid evidentiary requirement. In *INS v. Jong Ha Wang*, 450 U.S. 139, 143, 101 S.Ct. 1027, 1030, 67 L.Ed.2d 123 (1981), the Supreme Court held that the BIA can require affidavits or other evidentiary material supporting the particular facts claimed to constitute hardship in determining whether to hold a hearing on an alien's motion to reopen. A similar evidentiary requirement is permissible in a case such as the present one. Such a requirement tends to reduce, although perhaps not entirely eliminate, speculation that the claim of hardship resulting from family separation occasioned by deportation is being made merely for purposes of litigation. It is reasonable, therefore, for the BIA to require in such a case proof that deportable parents will in fact separate from their citizen children.

The Perezes did not meet this evidentiary burden. The only evidence bearing upon intent to separate was Tifferet Perez's testimony that she and her husband had not considered whether they would eventually leave Avi behind. The Perezes presented no evidence of arrangements for Avi's care in their absence. In these circumstances, the BIA properly determined that the Perezes failed to establish an intent to separate, obviously an element of any claim of hardship due to family separation resulting from deportation.

Review DENIED.